# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**HELENA CHEMICAL COMPANY**                                                               **PLAINTIFF**

**VS.**                                   **CIVIL ACTION NO.: 4:16-CV-86-JMV**

**R&E FARMS, ET AL.**                                                         **DEFENDANTS**

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion of the Plaintiff Helena Chemical Company for summary judgment against the Defendants [28]. For the reasons explained hereafter, summary judgment is granted in favor of the Plaintiff.

## Facts

The following facts are undisputed: On January 23, 2015, R&E Farms, a partnership, entered into a Credit Sales and Services Agreement with Helena Chemical ("Credit Sales and Services Agreement" or "CSSA"). In relevant part, the agreement provides:

> In consideration of being extended credit, now or in the future . . . R&E Farms Ptr . . . agrees as follows: . . . Paragraph 6: . . . the purchaser shall be responsible for the payment of all costs of collection incurred by Helena, including expenses and reasonable attorney's fees . . . Paragraph 7: Helena may, at any time, revoke the purchaser's privilege of purchasing on credit with respect to future purchases of Products or Services . . . Paragraph 17: This Agreement shall be governed by Tennessee law without regard to choice of law rules. Paragraph 18: In the event that the terms of this Agreement conflict with the terms of any other document or agreement between Helena and purchaser, the terms of this Agreement shall control. . . . Paragraph 19: All provisions under this agreement, including but not limited to, the provisions of paragraphs 2 and 3 above, and the foregoing conditions of sale and limitations of warranty, liability, and remedies, may be varied or waived only by agreement in writing signed by a credit manager, director of credit, or an officer of Helena.[1]

---
[1] CSSA [4]-1 at 1.

On the same date, R&E Farms executed an Extended/Future Terms Request – Variable Prime Plus.[2] The Extended Terms request provides the Extended Terms due date: [handwritten in this blank is the date 12-15-15] and Extended terms credit limit: [handwritten in this blank is the number $375,000, which is marked through and handwritten in is the figure $225,000]. The agreement further provides that:

> Any amount owed for products and services covered by this Extended Terms Request which is not paid and credited to purchaser's account ("Extended Terms Open Balance") within the aforesaid timeframe shall be assessed a Finance Charge. . . . This Extended Terms Request shall not be binding on either party until executed by the Division Credit Manager, and at such time the undersigned purchaser agrees that the terms hereof shall apply only to the purchases of products and services identified above. Except as expressly amended or modified in this Extended Terms Request, the terms of the Credit Sales and Services Agreement or Credit Sales Agreement, as applicable, between Helena and purchaser shall remain in full force and effect.[3]

The Extended Terms Request was approved by the Division Credit Manager on February 6, 2015. On June 26, 2015, R&E's purchases on credit rose from $224,690.28 to $227,974.28. No further purchases on credit were permitted by Helena thereafter, and a balance of $227,277.47 remained owning by R&E as of December 15, 2015, the extended terms due date.

As of April 5, 2016, just prior to suit being filed by Helena, a balance of $237,616.84, plus additional interest, remained unpaid. Helena brought suit for payment on April 29, 2016. The extended terms request was not attached to the complaint. Only the CSSA and a payment demand letter dated March 18, 2016, were attached to the complaint (and later the amended complaint). In addition to suing R&E Farms for the unpaid balance, Helena also sued Young, a partner in R&E, personally for the balance.

On June 30, 2016, R&E and Young answered the amended complaint. Answer [11]. Neither denied incurring and owing the invoices sued on, but they argued variously that they

---

[2] Extended/Future Terms Request [28]-4 at 1.
[3] Extended/Future Terms Request [39]-1 at 3.

were entitled to a credit in an unstated amount. Specifically, Defendants asserted Helena had unclean hands; Helena failed to mitigate its damages, which Defendants also asserted made them subject to set off; and that Young was not personally a party to the CSSA.

A Case Management Order was entered setting an amendments deadline of October 3, 2016; discovery deadline of November 18, 2016; and motions deadline of December 7, 2016. Case Management Order [19]. On November 7, 2016, R&E moved to extend the discovery deadline until January 19, 2017, and the dispositive motions deadline to February 6, 2017. Motion to Extend CMO Deadlines [27]. The motion was granted by text only order on that same day.

On December 6, 2017, Helena filed a motion for summary judgement [28]. In its memorandum in support of the motion [29], Helena asserts that the credit limit pursuant to the Extended Terms Agreement attached to the motion was $225,000, and that R&E exceeded the credit limit. According to Helena, "there are no facts to support the allegation (made by Young at deposition) that Helena's hands were unclean because it would not extend additional credit to R&E (beyond June 26, 2015)."[4] Helena also asserts that because Young is a partner of R&E, a Mississippi partnership, under Miss. Code Ann. § 79-13-306, he is personally liable for the partnership's debts.

On January 10, 2017, Defendants filed a memorandum in response to the motion for summary judgment [33]. In the memo, Defendants assert that Helena had, in the normal course of business during past farm years "allowed Mr. Young and or his various entities to exceed limits of credit at various times . . . (and) because it did not do so on this occasion Mr. Young was forced to procure financing elsewhere."[5] Defendants contend this procurement of financing

---

[4] Memorandum in Support of Motion for Summary Judgment [29] at 7.
[5] Response in Opposition to Motion for Summary Judgment [33] at 3.

3

took two weeks in the middle of the crop year. This, Defendants contend, lowered the revenue from his crops in some unspecified amount. Though scattered, Defendants argue in their opposition response 1) that the duty of good faith and fair dealing obligated Helena to continue allowing them to purchase on credit until the crop year had been completed; 2) that the extended terms credit limit contains first the number $375,000 which is lined through and beside it the number $225,000 is written;[6] 3) that the extended due date is December 15, 2015, but Helena "called the Note early";[7] and 4) that it took two weeks to get additional credit for the farm year because Helena tortuously interfered with R&E's business by telling a competitor that R&E owed it money.

Young does not assert he is not liable as a matter of statute for the partnership debts in the response, nor does he offer any evidence of a Note, or that any such alleged note was called prior to December 15, 2015. All that Defendants offer as evidence in support of their opposition to the summary judgment motion is the Extended Terms Agreement and an affidavit of Defendant Young in which he asserts 1) that Helena in the years prior to 2014 had "always extended him credit to finish his crop, even sometimes above my credit limit"[8] and 2) an alleged statement made to Young by an employee of a competitor of Helena's that R&E was in debt to Helena—information Young surmises could only have come from an employee of Helena.

In reply to the response of Defendants, Helena asserts it had a contractual right to revoke R&E's privilege to purchase on credit at any time pursuant to paragraph 7 of the CSSA; there is no claim of torturous interference of business pled in the answer, and no evidence to support same if there were. Further, Helena asserts that there is no claim for breach of the duty of good

---

[6] According to Defendants, because "Young's initials do not appear beside this change, it is possible this revision was made without Young's knowledge." Memorandum in Opposition to Motion for Summary Judgment [33] at 7.
[7] Memorandum in Opposition to Motion for Summary Judgment [33] at 7.
[8] Affidavit of Richard Young [32]-1 at ¶ 4.

faith and fair dealing pled in the answer, and if there were, no viable proof in support of such claim, or even a breach of contract claim to which to append the claim. Ultimately Helena's argument is simple: it had an express contractual right to, at any time, revoke the privilege of buying on credit.

After the close of discovery and completion of briefing on the summary judgment motion, the Defendants moved to amend their affirmative defenses, while at the same time asserting that their affirmative defenses had theretofore been properly pled. Motion for Leave to File Amended Answer and Affirmative Defenses [39]. According to the motion to amend, the additional matters Defendants seek to add are "simply arguments to be made and supported with relevant evidence." The court finds by separate order that the woefully late proposed amendment, even if granted, would be futile to the outcome of this case, the motion to amend is being denied. Nevertheless, the arguments raised by the Defendants in the proposed amendment and previously argued, even if not specifically pled, have been taken into consideration by the undersigned in making the instant ruling.

## **Analysis**

The court does not find that the CSSA and Extended Terms Agreement are ambiguous as concerns the stated contractual right of Helena to terminate R&E's privilege of buying on credit at any time. The bottom line is that the CSSA clearly articulates this right and nothing in the Extended Terms Agreement "expressly modifies that right" (as the parties agreed in writing it would have to in order to modify a term of the CSSA).[9] In other words, though the Extended Terms Agreement states a limit on the amount of credit to which the more favorable extended terms would apply, it is silent on the issue of whether Helena was obligated to extend that credit. Only the CSSA addresses that subject, and it is unambiguous. Indeed, even if there were some

---

[9] Extended/Future Terms Request [39]-1 at 3.

argument that the Extended Terms Agreement conflicted with the CSSA, the CSSA clearly provides that its provisions control. Only where the extended terms agreement expressly modifies a provision of the CSSA does the Extended Term Agreement control, and this, again, is clearly and unambiguously stated. As a consequence, it is immaterial whether R&E had actually exceeded a credit limit[10] when the availability of further credit was terminated.

Because the contractual agreements between the parties specifically address the issue of revocation of credit, Defendants' reliance on the doctrines of good faith and fair dealing, past practice, unclean hands, or like equitable doctrines, to abridge or modify those terms is misplaced under the law of Tennessee or that of Mississippi. Simply, where the parties have clearly agreed by contract on an issue, such as the right of a party to revoke at any time, that expression will control as a matter of law. Under Tennessee law, the interpretation of a contract is a question of law. *Cummings Inc.v. Dorgan*, 320 S.W. 3d 316, 333 (Tenn. Ct. App. 2009) ("Where the contract is clear and unambiguous, its literal meaning controls."). The implied covenant of good faith and fair dealing does not "create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Goot v. Metro. Gov't of Nashville & Davidson Cty.*, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005); *see also*, *Corenswet, Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129, 138 (5th Cir. 1979). When a contract contains a provision expressly sanctioning termination without cause, there is no room for implying a term that bars such a termination. In the face of such a term, there can be, at best, an expectation that a party will decline to exercise his rights.

Further, the Defendants cite absolutely no authority, nor did the court find any, for the proposition that the parties' past conduct can vary an unambiguous, explicit contractual

---

[10] The Defendants did not actually assert at the hearing on the motion for summary judgment that the credit limit to which the extended terms would apply was one number as opposed to another, only that it "might have been."

6

provision such as that contained in the CSSA allowing Helena to terminate credit to Defendant *at any time*.[11] Under Mississippi law, "a party has not breached the implied covenant of good faith and fair dealing when the party 'took only those actions which were duly authorized by the contract.'" *Lambert v. Baptist Memorial Hosp. North-Mississippi, Inc.*, 67 So.3d 799, 804 (Miss. Ct. App. 2011) (quoting *GMAC v. Baymon,* 732 So.2d 262, 269 (Miss. 1999)). In this case, Helena "did not act in bad faith by merely exercising [its] contractual right to terminate the agreement." *Id.*

As for the claim against Young individually as a partner in R&E, Young does not assert he is not liable as a matter of statute for the partnership debts in his response and the court is unaware of any authority for that position in light of the statutory directive of Miss. Code Ann. § 79-13-306. Nor, for that matter, do Defendants offer any evidence of a Note or that any such alleged Note was called prior to December 15, 2015. Accordingly, the court finds those arguments without merit.

Finally, as to the remaining claim for tortious interference with business, summary judgment is proper. R&E has offered no admissible evidence in support of such claim and discovery is now closed. Indeed, according to Young's affidavit, this claim is based on an alleged statement of another about a subject which Young merely surmises must have been known to the other as a consequence of yet another supposed statement by potentially any employee of Helena. As Helena suggests, it is elementary that such supposed "proof" is insufficient to withstand summary judgment. In fact, Federal Rule of Civil Procedure 56(c)(4) specifically provides: "An affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

---

[11] CSSA [4]-1 at 1.

Federal courts may properly consider affidavits and depositions "insofar as they are not based on hearsay or other information excludable from evidence at trial." *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987). Further, the United States District Court for the Northern District of Mississippi explicitly recognizes *Martin* to hold that "a district court may not consider either hearsay evidence in affidavits or unsworn documents in a summary judgment proceeding." *Darnell v. Stanford*, 2016 WL 7223383, at *2 (N.D. Miss. Dec. 8, 2016).

## Conclusion

For the foregoing reasons, the court finds summary judgment in favor of the Plaintiff is proper and awards Plaintiff the following: A judgment against the Defendants jointly and severally for the amounts sued upon plus additional interest incurred and accruing at the monthly contractual rate, until entry of judgment, plus reasonable attorney fees and expenses and post judgment interest at the legal rate. The Plaintiff is directed to file, within 14 days hereof, an affidavit in support of its calculation of the total debt due as of the date of this judgment and itemizing requested attorney fees. Defendants shall have 14 days thereafter to challenge the mathematical calculation of the amount due and owing (i.e. challenge clerical mistakes in the calculation) as well as to challenge the reasonableness of said fees and expenses. The Plaintiff shall have 7 days to reply.

**SO ORDERED** this, the 27th day of February, 2017.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**